FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Criminal No. 09-369 |
| **v.** | **OPINION** |
| **PAUL W. BERGRIN, et al.** | **HON. WILLIAM J. MARTINI** |

**WILLIAM J. MARTINI, U.S.D.J.:**

On November 10, 2009, a federal grand jury in Newark returned a thirty-nine

count Superseding Indictment (hereinafter "Indictment" or "S.I.") against Defendants

Paul Bergrin, Yolanda Jauregui, Thomas Moran, Alejandro Barraza-Castro

("Alejandro"), Vicente Esteves, Alonso Barraza-Castro ("Alonso"), Jose Jimenez, and

Sundiata Koontz.  This Indictment charges an array of criminal activity, ranging from

conspiracy to murder a government witness and witness bribery to mortgage fraud and

drug conspiracy, with a prostitution charge in between.  These varied charges are

presented by the government as schemes,[1] joined together under the umbrella of RICO,

the Racketeering Influenced and Corrupt Organizations statute.  As will be discussed

herein, the Indictment alleges that Defendant Bergrin led "The Bergrin Law Enterprise"

---

[1] As part of its oral argument on April 7, 2010, the Government presented a "Timeline of
Racketeering Acts."  The schemes referred to in this Opinion are drawn from the Government's
timeline and from the Government's grouping of the racketeering acts in the Indictment.

and committed the aforementioned acts in conjunction with his RICO co-defendants
Jauregui, Moran, Alejandro, and Esteves[2] (collectively the "RICO Defendants"), as well
as those remaining defendants who each are charged only in the substantive non-RICO
counts.

This matter presently comes before the Court on several pretrial motions related to
the RICO counts.  The first motion, brought by Defendants Bergrin, Jauregui, Moran, and
Alejandro, seeks dismissal of the substantive Racketeering violation alleged in Count
One of the Superseding Indictment for failure to state an offense.  The next two related
motions seek dismissal of the Racketeering Conspiracy and Violent Crimes in Aid of
Racketeering ("VICAR") counts on the same basis.

## I.    Motion To Dismiss Count One – Racketeering

Count One, the substantive RICO count, charges Defendants Bergrin, Jauregui,
Moran, and Alejandro Barraza-Castro with a Section 1962(c) violation.  In order to plead
a Section 1962(c) violation, the Government must set forth the following four elements:
(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant
was employed by or associated with the enterprise; (3) that the defendant participated in,
either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he
or she participated through a pattern of racketeering activity.  *United States v. Irizarry*,

---

[2] Defendants Bergrin, Jauregui, and Moran are charged in all three RICO counts – Count One
(Racketeering, in violation of 18 U.S.C. § 1962(c)), Count Two (Racketeering Conspiracy, 18
U.S.C. §1962(d)), and Count Three (Violent Crimes in Aid of Racketeering, 18 U.S.C. §
1959(a)(3)).  Alejandro Barraza-Castro is charged only in the first two counts, and Vicente
Esteves is charged only with Violent Crimes in Aid of Racketeering.

341 F.2d 273, 285 (3d Cir. 2003).

The RICO Defendants move to dismiss Count One under Federal Rule of Criminal Procedure 12(b)(3) for failure to state an offense.  Specifically, they argue that the Indictment fails to allege both a "pattern of racketeering activity" and an "enterprise." Before addressing each of these arguments, the Court first will describe the racketeering acts alleged in the Indictment.

    A.    <u>Facts as Alleged in Count One</u>

Defendant Bergrin was an attorney with a law office in Newark, New Jersey. According to the Indictment, Bergrin was the leader of "The Bergrin Law Enterprise," which in addition to Bergrin, included the following as its members and associates: Yolanda Jauregui, Thomas Moran, Alejandro Barraza-Castro, Vicente Esteves, the Law Office of Paul W. Bergrin, P.C., P.B. & V, P.A.,[3] Premium Realty Investment Corp., Inc., and Isabella's International Restaurant, Inc.  (S.I. ¶ 24.)   Among the purposes and objectives alleged for this enterprise were:  providing the enterprise and its leaders, members and associates with an expanding base of clients for legal and illegal services; generating, preserving and protecting the enterprise's profits and client base through commission of the predicate acts; protecting and preserving Paul Bergrin's status as a licensed attorney; enhancing defendant Paul Bergrin's reputation as a criminal defense attorney; and, promoting and enriching the enterprise and its members, while concealing the enterprise's criminal activities.  (S.I. ¶ 4.)

---

[3] While this acronym is not spelled out in the Indictment, during oral argument, the parties referred to this entity as the law firm of Pope, Bergrin, & Verdesco.

As the alleged leader of "The Bergrin Law Enterprise," the Indictment states that Bergrin, with his RICO co-defendants, "use[d] the special privileges granted to licensed attorneys to engage in and assist Client Criminals to engage in criminal activities." (S.I. ¶ 6.) These criminal activities are broken down by scheme in the Racketeering charge as follows:

- o   Conspiracy to Murder Kemo DeShawn McCray
- o   Conspiracy to Murder Witnesses Against Vicente Esteves
- o   Bribery of a Witness Against Ramon Jauregui
- o   Drug Conspiracy
- o   Operating a Prostitution Business
- o   Mortgage and Tax Fraud

These varied schemes spanned approximately six years, from late 2003 through May 2009.

1.   *Conspiracy to Murder Kemo Deshawn McCray* (Racketeering Act One, Counts Four and Five)[4]

The first scheme alleged is the conspiracy to murder Kemo Deshawn McCray, a government cooperating witness set to testify against one of Defendant Bergrin's clients, William Baskerville.  After Bergrin entered Baskerville's case on November 25, 2003, he purportedly met with Baskerville's drug trafficking associates and informed them that McCray was a cooperator.  During this meeting, Defendant Bergrin also allegedly informed these associates that the murder of McCray would result in Baskerville going free.  On March 2, 2004, Kemo Deshawn McCray was murdered.

---

[4] Since the racketeering acts alleged also are set forth as substantive charges later in the Indictment, for ease of reference, the headings in this section will list both where the acts can be found in the RICO charge and where they are charged later in the Indictment.

2.      *Conspiracy to Murder Witnesses Against Vicente Esteves* (Racketeering
         Acts Two and Three, Counts Six through Eleven)

Four years later, Defendant Vicente Esteves retained Defendant Bergrin to represent him on pending drug charges in Monmouth County, New Jersey. The Indictment alleges that Esteves sought not only legal services from Defendant Bergrin; Esteves also purportedly hired "The Bergrin Law Enterprise" to plan the murder of those government witnesses set to appear against him in this Monmouth County case. In connection with this plot to kill the Monmouth County witnesses (also referred to hereinafter as "the Monmouth County scheme"), Defendants Bergrin, Moran, and Esteves allegedly solicited a "hitman." This hitman, unbeknownst to them, was a government informant.

The Government charges the Monmouth County scheme as a Travel Act conspiracy under 18 U.S.C. § 371 and sets forth several acts in furtherance stemming from the hitman's interactions with Bergrin, Moran, Esteves, and Jauregui. For example, during the summer of 2008, Bergrin allegedly met with the hitman several times, and Moran smuggled a cellphone into the Monmouth County Jail for Esteves to be used for calls to the hitman. In December 2008, these acts culminated in a conversation during which Bergrin purportedly told the hitman to murder a witness but to make it look like a home invasion robbery. No murder occurred.

3.      *Bribery of a Witness Against Ramon Jauregui* (Racketeering Act Four, Counts Thirteen through Fifteen)

The third scheme alleged involves a criminal case against Ramon Jauregui, Yolanda Jauregui's brother.  When Ramon was charged with robbery in Essex County, New Jersey, the Indictment alleges that Defendants Bergrin, Yolanda Jauregui, and Moran bribed a witness to testify falsely.  Specifically, the Indictment states that these defendants paid or assisted in paying this witness $3000 to falsely exculpate Ramon Jauregui.  This conspiracy began on or about January 5, 2009 and ended on February 19, 2009.

4.      *Drug Conspiracy* (Racketeering Acts Five through Seven, Counts Sixteen through Twenty)

The fourth scheme involves a cocaine trafficking business allegedly operated by Defendants Bergrin, Jauregui, and Alejandro from January 2005 through May 21, 2009 out of a restaurant in Newark, New Jersey.  Isabella's International Restaurant purportedly served as a "stash house" used to store "multi-kilogram quantities of cocaine and the proceeds of cocaine sales."  (S.I. ¶ 18).   In connection with the affairs of this stash house, the Indictment sets forth several racketeering acts, including conspiracy to distribute (against Defendants Bergrin, Jauregui, and Alejandro) and possession with intent to distribute five kilograms or more of cocaine (against Alejandro only).[5]  In

---

[5] Like all of the other aforementioned schemes, in addition to being pled as a RICO predicate, the drug conspiracy is also charged as a substantive count in the Indictment.  Defendants Alonso and Jimenez are charged only in these substantive drug counts, specifically Count 16 (conspiracy to distribute cocaine), Count 17 (distribution of cocaine), and Count 20 (maintaining drug-

addition, the Indictment also charges Alejandro with distributing 500 grams or more of cocaine on December 8, 2008.

5.    *Operating a Prostitution Business* (Racketeering Act Eight, Counts Twenty-One through Twenty-Three)

From July 24, 2004 through March 2, 2005, the Indictment alleges that Defendant Bergrin assisted a client (referred to as "J.I.") with the running of J.I.'s prostitution business in New York state.   Bergrin mailed letters to the New Jersey Parole Board, falsely stating that J.I. was employed by Bergrin's law office.  These letters helped J.I. to evade his New Jersey parole restrictions and operate the prostitution business out of New York.  In addition to writing letters, Bergrin provided J.I. with photocopies of checks drawn from the account of Premium Realty Investment Corp., an entity allegedly owned by Bergrin.  These checks were meant to substantiate J.I.'s false claims to the Parole Board regarding his employment with Bergrin.

When J.I. was arrested in New York state, the Indictment states that Bergrin managed J.I.'s prostitution business while he was incarcerated.  At some point, Bergrin also was arrested in New York and subsequently charged with a prostitution-related offense.[6]

---

involved premises).  In these three counts, Alonso and Jimenez are charged with Alejandro but only Alejandro is named as a RICO defendant.

[6] Defendant Bergrin later pled guilty to a misdemeanor prostitution offense in New York state and was sentenced to a term of probation.

6.      *Mortgage and Tax Fraud* (Racketeering Acts Ten through Thirteen, Counts Twenty-Four through Thirty-Six)

Finally, the sixth alleged scheme involves a mortgage fraud conspiracy, in which RICO Defendants Bergrin and Jauregui purportedly sold real estate[7] to individuals they knew had fraudulently obtained mortgage loans to pay for the properties.[8]  Bergrin and other attorneys from his law office allegedly served as closing attorneys on these transactions.   This scheme began in May 2005 and continued through the beginning of April 2006.

B.      Fed. R. Crim. P. 12(b)(3) Standard

A motion to dismiss under Federal Rule of Criminal Procedure 12(b)(3)(B) tests the sufficiency of the Indictment.  In analyzing a motion to dismiss, the Court must accept as true the facts as alleged and determine if those facts constitute a violation of the law under which the defendant is charged.  *United States v. Zauber*, 857 F.2d 137, 144 (3d Cir. 1988).   Further, the Court is limited to the four corners of the Indictment itself, as the sole function of a motion to dismiss is to test the sufficiency of the allegations, not the government's evidence. *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

In assessing an Indictment's sufficiency, the Court looks to whether the charging

---

[7]  The Indictment states that Bergrin and Jauregui owned at least one of these properties through Premium Realty Investment Corp., Inc.

[8] Defendant Koontz, while not charged in the RICO mortgage fraud predicates, is charged with Bergrin and Jauregui in the substantive mortgage fraud counts in the Indictment, Counts 24 through 29.

document: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). The sufficiency of an Indictment may be challenged not only on the basis that it fails to charge the essential elements of the statutory offense, but also on the ground that "the specific facts alleged ... fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella,* 277 F.3d 678, 685 (3d Cir. 2002). In so holding, the Third Circuit in *Panarella* rejected the Government's contention that "an Indictment or information charges an offense … as long as it recited in general terms the essential elements of the offense, even if the specific facts alleged in the charging instrument fail to satisfy those elements." *Id.*; *see also United States v. McGeehan*, 584 F.3d 560, 575 (3d Cir. 2009) (dismissing wire fraud counts where Indictment failed to aver sufficient facts to set forth the offenses as charged). Accordingly, in assessing the sufficiency of the instant RICO charge, the Court may look past general recitations of statutory language to the facts alleged to determine whether a RICO offense has been set forth. *See Vitillo*, 490 F.3d at 321 ("An indictment must allege more than just the essential elements of the offense.").

With these principles in mind, the Court now turns to the RICO Defendants' Rule 12(b)(3) motion to dismiss on the grounds that this Indictment fails to allege both a "pattern of racketeering activity" and an "enterprise."

C.     "Pattern of Racketeering Activity"

In defining the contours of the RICO pattern of racketeering element, the Supreme Court has explained that the term "pattern" requires "more than just a multiplicity of racketeering predicates." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). "A pattern is an arrangement or order of things or activity … and the mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order." *Id.* (citation omitted). Rather, "[i]t is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'" *Id.*

Thus, to plead a pattern of racketeering activity, the predicate acts alleged must be related and must pose a threat of continued criminal activity.[9] *Id.* at 239. The Third Circuit has emphasized that "relatedness" and "continuity" are distinct requirements that must be satisfied in order to establish a RICO pattern of racketeering activity. *United States v. Eufrasio*, 935 F.2d 553, 564 (3d Cir. 1991).

_____

[9] While the Government maintains that relatedness and continuity are proof elements for trial and not pleading requirements, the Third Circuit has considered both on a motion to dismiss. *See Hollis-Arrington v. PHH Mortg. Corp.*, 205 F. App'x 48, 54 (3d Cir. 2006) ("To plead a pattern of racketeering activity, Hollis-Arrington must aver not only that each defendant committed at least two acts of prohibited racketeering activity but also that the predicate acts are related and that they amount to or pose a threat of continued criminal activity."); *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F. Supp. 2d 677, 688 (D.N.J. 2008) (assessing sufficiency of continuity pleading on a motion to dismiss); *see also GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) ("[A] plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.' The plaintiff must plead at least two predicate acts, see § 1961(5), and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity"). As such, this Court shall consider relatedness and continuity for the purposes of the instant motion.

10

1.    *Relatedness*

The relationship prong "focuses on the *inter-relationship* of the charged RICO

predicates." *Eufrasio*, 935 F.2d at 564-65 (emphasis in original).  A relationship exists

among predicate acts if they "have the same or similar purposes, results, participants,

victims, or methods of commission, or otherwise are interrelated by distinguishing

characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. This relationship

requirement "exists to ensure that RICO is not used to penalize a series of disconnected

criminal acts." *Eufrasio*, 935 F.2d at 565.

Defendant Bergrin argues that the racketeering predicates alleged in the

Indictment are such a series of disconnected acts, since they "share little in terms of

defendants, subject matter, manner of commission or time frame." (Bergrin Reply Br. 8).

The Court agrees.  There is little on the face of the Indictment demonstrating relatedness

among the varied white collar frauds and street crimes offered by the Government as

RICO predicates.  The Government even conceded as much during oral argument,

admitting that these disparate acts could not be joined but for the allegation of a RICO

enterprise:

> *Court*:  If there were no RICO statute in existence when you did this investigation and
> you returned everything but the three RICO counts, could you legally have joined all
> those counts? And if so, under what theory could you legally have joined all those counts
> even as to just Mr. Bergrin?
>
> *Government*:  Well, Judge, I am not sure -- I certainly haven't done the analysis on that.
> My sense is that it would be a difficult proposition to do that.

*See* Tr. of Oral Argument ("Tr.") 39.  Again, in response to questioning the Government
admitted that the acts would be prejudicially joined under Rule 14(a):

> *Court*:  If there were no RICO count, could any of these [substantive counts] be
> tried together without violating the principles of Rule 14?
>
> *Government*:  Probably not.

*See* Tr. 44. These admissions speak volumes as to the disparate nature of the substantive
crimes that, in effect, also serve as the racketeering predicates.[10]  While the Government
maintains that these wide-ranging crimes nonetheless fall within the ambit of a RICO
pattern, to hold as much would be to condone the precise type of overreaching that courts
and commentators have warned against since the enactment of RICO.  *See, e.g.*, *United
States v. Riccobene*, 709 F.2d 214, 221 (3d Cir. 1983) (discussing concerns expressed
about the broadness of RICO and stating "the statute could be extended to situations far
removed from those actually contemplated by Congress … federal prosecutors could use
the law to invoke an additional penalty whenever they had a case involving the
commission of two offenses that, coincidentally, were among those listed as 'racketeering
activities.'").

---

[10]  The differences between these RICO predicates are not merely a pleading concern.  Thinking
through to the practicalities of trial, it concerns the Court that evidence of these different alleged
criminal acts likely would pose evidentiary problems. For example, the Court would be sensitive
to the admission of the Kemo murder evidence in conjunction with the Monmouth County
hitman case, which involved different defendants, save Bergrin, and occurred four years later.
To the extent that the hitman evidence would be used to demonstrate motive in the Kemo trial,
this clearly would be inappropriate.  Further, the spillover prejudice from the introduction of
each witness murder case in a trial of the other would give the Court serious pause.  Beyond this,
the Government would introduce its mortgage fraud case and prostitution cases during the same
megatrial.  The many and complex limiting instructions that would have to be employed as to the
counts and defendants would confound the Court, let alone the jurors.

The predicate acts alleged range from murder of a witness to drug distribution to mortgage fraud.   They may be grouped as follows:

- o  <u>The Kemo Murder Case</u> (11/03-3/04):  Bergrin only;
- o  <u>The Prostitution Case</u> (7/04-3/05):  Bergrin only;
- o  <u>The Drug Conspiracy Case</u> (1/05-5/09):  Bergrin, Jauregui, Alejandro Barraza-Castro, and non-RICO Defendants Alonso Barraza-Castro and Jimenez.
- o  <u>The Mortgage Fraud Case</u> (5/05-4/06): Bergrin, Jauregui, and non-RICO defendant Koontz; and,
- o  <u>The Monmouth County/Esteves Case</u> (6/08-4/09):  Bergrin, Jauregui, Esteves, and Moran;
- o  <u>The Ramon Jauregui Bribery Case</u> (1/09-2/09): Bergrin, Jauregui, and Moran;

As evident from the list, this panoply of criminal activity has but one common denominator, Paul Bergrin, who is alleged to have participated in ten of the thirteen predicate acts.[11]  While the Government is correct that the Indictment's failure to name Bergrin in every predicate act "is not fatal," *see* Gov. Br. 40 n.8, the Indictment's failure to set forth similar or common purposes, victims, manners of commission, or otherwise distinguishing characteristics relating these predicates warrants dismissal.

  a.  <u>The Kemo Murder Case</u>

The Kemo murder case demonstrates most strikingly the deficiencies of the Government's pattern pleading.  This case shares nothing in common with the other schemes, save for the presence of Paul Bergrin, the only defendant purportedly involved. Bergrin is not alleged to have acted in concert with any of the RICO Defendants or any of

---

[11] Jauregui is named in five of the thirteen racketeering acts; Moran is named in two; and, Alejandro is named in three.

the RICO enterprise corporations, including his law office.  In fact, this case significantly predates the involvement of the other RICO Defendants in the alleged enterprise.[12] Compounding this problem, it is clear from the nature of the allegations that the Kemo murder case shares little, if anything, in common with the methods allegedly employed in the commission of the other predicates.  Thus, from the face of the indictment, it is clear to the Court that no enterprise existed at the time of the Kemo murder case, if ever.

       b.      <u>The Other Predicate Act Schemes</u>

The Government's pleading of the remaining predicate acts shares many of the same deficiencies.  Viewed together, these temporally-distinct schemes share no common defendants, save Defendant Bergrin.  Indeed, Bergrin appears alone in the prostitution scheme.  Alejandro appears only in the drug conspiracy.  Beyond this, it is evident on the face of these schemes that they lack any similarity in method.

Although the Government attempts to tie together the disparate predicates by arguing that they each furthered the "principal goals of the enterprise," Gov. Br. 39, the purposes offered in the Indictment undermine the assertion that the RICO persons share any such common objectives.  Among the purposes offered are:

---

[12] The next scheme alleged to have occurred is the prostitution case, which again involved only Bergrin.  After the prostitution case, the next scheme by date is the drug conspiracy.  This scheme allegedly began in January 2005; however, it bears noting that the Indictment pleads no acts in furtherance of this conspiracy until December 2008.  (S.I. ¶ 33) (setting forth Racketeering Act Seven alleging that Jauregui and Alejandro intentionally distributed 500 grams or more of cocaine).  Thus, to the extent that the Government contends that the existence of an enterprise around the time of the Kemo murder is bolstered by commencement of the prostitution scheme or the drug conspiracy shortly thereafter, this argument is undermined both by lack of any co-defendant involvement in the prostitution and the lack of any alleged overt acts in this drug conspiracy until late 2008.

- o providing The Bergrin Law Enterprise and its leaders, members and associates with an expanding base of clients for legal and illegal services;
- o generating, preserving and protecting The Bergrin Law Enterprise's profits and client base through acts of, among other things, witness tampering, murder, conspiracy to commit murder, traveling in aid of racketeering enterprises, bribery, drug trafficking, prostitution, wire fraud and money laundering;
- o protecting and preserving Paul Bergrin's status as a licensed attorney; and,
- o enhancing defendant Paul Bergrin's reputation as a criminal defense attorney.

(S.I. ¶ 4.)

Given these alleged objectives, it strikes the Court that each pertains to Paul Bergrin individually as an attorney.[13] Even the name given to this alleged entity – The Bergrin Law Enterprise – reflects this fact. The enhancement of Bergrin's reputation and the preservation of his law license are clearly of unique importance to Bergrin himself, as is the expansion of his law firm's client base. As further demonstration of this, the Indictment emphasizes that "The Bergrin Law Enterprise" offers "legal and illegal services" to its "clients." This purpose again speaks to Paul W. Bergrin, Esq. While the Indictment attributes these objectives to the other members and associates of the enterprise, it strains credulity to argue, for example, that Alejandro Barraza-Castro, an alleged drug dealer, shared the aforementioned purposes regarding Bergrin's law license and his client base.

Thus, the Indictment as pled offers a series of disconnected street crimes and white collar frauds carried out using divergent methods for distinct purposes at different times

---

[13] This issue is discussed in more detail *infra*.

as the RICO "pattern."  These disparate acts lack the indicia of relatedness required for a

pattern and do not satisfy, on their face, the RICO pattern of racketeering requirement.

     2.    *Continuity*

Beyond relatedness, to set forth a pattern of racketeering, the Indictment also must

set forth "continuity."  "Continuity is both a closed- and open-ended concept, referring

either to a closed period of repeated conduct, or to past conduct that by its nature projects

into the future with a threat of repetition." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,

241 (1989).  "A party alleging a RICO violation may demonstrate continuity over a

closed period by proving a series of related predicates extending over a substantial period

of time." *Id.* at 242.  Alternatively, the government may allege open-ended continuity

through "related predicates [that] themselves involve a distinct threat of long-term

racketeering activity." *Id.*

As both the open-ended and closed-ended definitions imply, related predicates are

prerequisite to a finding of continuity.  In *H.J., Inc.*, for example, the Supreme Court's

continuity determination hinged not solely on the duration of the alleged predicate acts

but also on their relatedness, particularly in demonstrating that they were "part of an

ongoing entity's regular way of doing business." *Id.*  The complaint in that case set forth

an ongoing bribery scheme over the course of six years, directed at influencing the

ratemaking decisions of five members of a regulatory agency.   This common bribery

scheme executed over several years allowed the Court to discern a distinct threat of long-

term racketeering activity.

Conversely, for the reasons set forth above, the Court holds that the predicate acts as alleged in the instant Indictment lack the commonality required for a finding of relatedness and thus continuity.   The fact that these acts as alleged spanned nearly six years is not sufficient, in and of itself, to satisfy the continuity requirement.  *See Hindes v. Castle*, 937 F.2d 868, 875 (3d Cir. 1991) ("We observe that not one of our post- *H.J. Inc.* cases has found continuity satisfied by the duration of the predicate acts alone."). Instead, there must also be a threshold showing of commonality among the acts.  Finding no such showing there, the Court cannot hold that the racketeering acts alleged demonstrate continuity.  As such, the Indictment does not set forth a pattern of racketeering on its face.

The Court notes, however, that where racketeering acts lack relatedness and continuity, and therefore do not form a pattern on their face, the Third Circuit may deem them a pattern nonetheless if undertaken in association with a RICO enterprise.  *United States v. Eufrasio*, 935 F.2d 553, 565 (3d Cir. 1991).  While this is most frequently encountered in organized crime or union corruption cases, the Court is mindful that the RICO statute can be applied outside of these contexts.  *See H.J., Inc.*, 945 F.2d at 611 (noting that RICO has not been limited to organized crime activity).  Thus, the next issue is whether such a RICO enterprise is pled sufficiently: (1) as a statutory element and (2) to allow the functionally unrelated acts pled by the Government to form a pattern.

D.    <u>"Enterprise"</u>

The existence of an enterprise is a distinct statutory element from the pattern and must be established in its own right. *Boyle v. United States*, 129 S. Ct. 2237, 2245 (2009). The RICO statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and *any union or group of individuals associated in fact although not a legal entity*." 18 U.S.C. § 1961(4) (emphasis added). Here, the Indictment states that "The Bergrin Law Enterprise" was an associated in fact enterprise, whose members and associates included the aforementioned RICO Defendants, as well as the Law Office of Paul W. Bergrin, P.C.; P.B.&V., P.A.; Premium Realty Investment Corp., Inc.; and, Isabella's International Restaurant, Inc. (S.I. ¶¶ 1, 2.)

As the *Boyle* Court succinctly stated, "an association-in-fact enterprise is 'a group of persons associated together for a *common* purpose of engaging in a *course of conduct*.'" *Boyle*, 129 S. Ct. at 2244 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). By definition, this association-in-fact enterprise must have a structure. *Id.* "From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[14] *Id.*

---

[14] The Government contends that it need not plead the enterprise with any specificity, as long as it identifies entities believed to be the enterprise. Gov. Br. 26. Further, the Government cites to *Seville*, a Third Circuit case holding that a civil RICO plaintiff need not plead the so-called *Turkette* factors – i.e., ongoing organization, functioning as a continuing unit, and existence separate and apart from the pattern – to state a cause of action. *Seville Indus. Mach. Corp. v.*

No structure, or at best a minimal structure, is pled in the instant Indictment with regard to "The Bergrin Law Enterprise."  Instead, the Government attempts to graft an enterprise onto the actions of Defendant Bergrin by alleging that he led "The Bergrin Law Enterprise."  S.I. ¶ 24(a).  The Indictment, however, does not describe what this leadership entailed.  Except for the labeling of Bergrin as the "leader," there is no discussion of the roles of the other associates, other than their commission of illegal acts.  *See, e.g.,* S.I. ¶¶ 24(d) ("Defendant Alejandro Barraza-Castro … conducted the affairs of The Bergrin Law Enterprise by, among other things, engaging in drug trafficking."); 24(c) ("Defendant Thomas Moran conducted the affairs of The Bergrin Law Enterprise by, among other things, engaging in conspiracy to murder witnesses, traveling in aid of racketeering enterprises and bribery of a witness.").

This pleading stands in stark contrast to the typical form of a RICO Indictment.  In an organized crime or union corruption RICO Indictment, for example, there is often a lengthy discussion of each associate's role in the enterprise and how the enterprise came to be.  *See, e.g.*, *United States v. Merlino*, 349 F.3d 144, 147 (3d Cir. 2003) ("The 111

---

*Southmost Mach. Corp.*, 742 F.2d 786, 790 (3d Cir. 1984).  In support of this holding, the *Seville* court noted that "[i]t is the function of discovery to fill in the details."  *Id.*  The Court notes the holding of *Seville* and agrees with the Government that failure to plead each of the three *Turkette* factors does not render an Indictment defective; however, the Court here does not rely on *Turkette* factors to assess the sufficiency of this enterprise pleading.  Instead, the Court is looking more fundamentally at whether each element of a Section 1962(c) violation has been pled, which, of course, includes both the pattern and enterprise elements.  *See Seville*, 742 F.2d at 790 n.5 ("It is an essential element of the RICO cause of action that the 'enterprise' be apart from the underlying pattern of racketeering."); *see also Boyle*, 129 S. Ct. at 2245 ("[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity.").  While facts establishing the pattern and the enterprise may coalesce, the two elements are not identical, rendering one or the other surplusage.  Accordingly, the Court will consider whether the enterprise has been pled as a distinct element from the pattern.

19

page indictment identifies defendants Merlino, Mazzone, Borgesi, Angelina, Ciancaglini, and Gambino as 'made' members of the Philadelphia LCN family – 'The Enterprise' - and Lutz and the four defendants who pled guilty as 'associates' in the family, a family, it was alleged, that has been in 'substantially continuous operation for a number of decades.' The structure, hierarchy, and manner in which the enterprise operated was set forth in the indictment in detail … The indictment described defendant Merlino as having risen through the ranks to be Acting Boss, defendant Mazzone to be Acting Underboss, and defendant Borgesi to be Acting Consigliere.").  There is no such pleading as to the history of the enterprise or the roles of its members' roles here.

Compounding this deficiency, the instant Indictment fails to plead a common course of conduct or unity of purpose to connect, for example, the mortgage fraud with the witness murder.  Each of the seven purposes pled in ¶ 7 of the Indictment inure to the benefit of Paul Bergrin, as discussed above with regard to the pattern of racketeering.  From such a pleading, no structure is readily apparent.

The Court acknowledges, however, that under *Boyle*, in certain circumstances, a structure need not be alleged.  Where a structure is not pled, the existence of an enterprise instead may be inferred from its alleged pattern of acts.  *Id.* at 2245; *cf. United States v. Console*, 13 F.3d 641, 650 n.5 (3d Cir. 1993) ("Although proof of a pattern of racketeering does not necessarily establish the existence of an enterprise, we have stated that *in the appropriate case*, the enterprise can be inferred from proof of the pattern.") (emphasis added).  This clearly assumes, of course, that a pattern of racketeering acts has

been sufficiently alleged, which is not the case here.

    1.    *Enterprise Pled as the Pattern of Racketeering*

On the face of the instant Indictment, the Court concludes that the "enterprise" requirement is insufficiently pled.  The Government hangs its hat on enterprise allegations that are both general and conclusory.  During oral argument, the Government emphasized that the Indictment included allegations beyond the bare text of the statute; however, even if that were so, a plain reading of the Indictment does not enable this Court to infer, consistent with *Boyle*, that an enterprise has been pled as a distinct element.  This is particularly true here, as the predicate act schemes on their face lack the commonality required for a pattern.[15]

Here, the Government attempts to plead an enterprise exclusively through its alleged acts, in effect labeling the pattern as the enterprise.  *See United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991) ("If the 'enterprise' is just a name for the crimes committed, or for their agreement to commit these crimes that was charged separately in the conspiracy count, then it would not be an enterprise within the meaning of the statute.").  While allegations regarding the enterprise may "coalesce" with the pattern of racketeering, these two elements are distinct and must be established separately.  *See Boyle*, 129 S.Ct. at 2245.  Accordingly, the Government cannot bootstrap an enterprise on

---

[15] Unless, of course, the common purpose of the enterprise is to break the law and the course of conduct is committing illegal acts.  To hold as much, however, would convert any garden variety criminal conspiracy into a RICO enterprise, which would be true neither to the letter nor the spirit of the RICO statute.

to the pattern.

By contrast, the facts of *Boyle* present a clear instance in which the pattern of racketeering acts alleged could lead a court to infer the existence of an associated in fact enterprise. *Boyle* involved a series of bank thefts in New York, New Jersey, Ohio, and Wisconsin. Specifically, from 1991 to 1994, a core group of participants was responsible for more than thirty night-deposit-box thefts and at least two attempted bank-vault burglaries. *Boyle*, 129 S. Ct. at 2241. This core group, which occasionally recruited others to assist it, met beforehand to plan its crimes and split the proceeds from the thefts. *Id.* From these allegations of a core group engaged in the same type of criminal conduct pre-existing the recruitment of additional outlying members, it is apparent how "evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce." *Id.* at 2245.

The acts alleged in the instant Indictment stand in stark contrast to *Boyle*. There is no core group alleged, other than Paul Bergrin himself. There is no common criminal conduct; instead, the acts alleged range from prostitution to murder to mortgage fraud without any apparent overlap or coordination, again other than the presence of Paul Bergrin, over different periods of time. In particular, as discussed *supra*, the murder of Kemo McCray stands apart, both temporally and substantively from the other acts.[16] Beyond this, the predicate acts themselves are so disparate in type and method that the

---

[16] To the extent that any of the RICO corporations, such as Premium Investment Realty Corp., existed at the time of the Kemo murder, they are not alleged to have been used or to have played any part in this temporally-distinct scheme.

22

Government conceded that they could not be properly joined under Rule 8(b) absent a

RICO count.  As such, "The Bergrin Law Enterprise" as alleged better fits Justice Alito's

example of circumstances not giving rise to a RICO enterprise:

> It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise.  For example, suppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates – for example, bribery or extortion.  Proof of these patterns would not be enough to show that the individuals were members of an enterprise.

*Id.* at 2245 n.4.

To the extent that the Government relied on *United States v. Masters* to support

the proposition that an enterprise can commit vastly different types of predicate acts, this

comparison likewise fails on the instant facts.  In *Masters*, the Seventh Circuit held that

an association-in-fact enterprise existed among a lawyer, his law firm, two police

officers, and their respective police departments where these individuals and entities

engaged in a kickback scheme.  924 F.2d 1362, 1365 (7th Cir. 1991). This core group

engaged in the predicate act bribery scheme for twelve years, at which point, the lawyer

decided to have his wife killed.  The lawyer, Masters, turned to his corrupt police

contacts to arrange the killing.

The Government contends that these two different categories of acts – bribery and

murder – demonstrate how disparate racketeering acts can be used to infer the existence

of an enterprise.  This argument, however, glosses over the most salient facts from

*Masters*.  The *Masters* enterprise existed for twelve years with the same individuals

pursuing the same kickback scheme for the same ends.  The existence of this enterprise

could be inferred consistent with *Boyle*.  That the defendant-attorney, Masters, then decided to use these same police officers to plan another crime did not negate the existence of that already-formed enterprise.

Conversely, in the instant case, the Indictment sets forth a number of unrelated criminal schemes and attempts to excuse their lack of temporal and substantive overlap by arguing that they were part of a growing enterprise.  However, looking at the schemes alleged in the Indictment by date and by defendant, the facts belie any assertion that an enterprise existed before, during, or after this growth and diversification.

Turning back to the schemes and the timeline, Bergrin allegedly acted by himself in the Kemo murder case in early 2004.  In the prostitution scheme later in 2004, Bergrin again acted alone.  By the time the drug conspiracy began in 2005, Bergrin allegedly was working with Defendants Jauregui, Alejandro, Alonso, and Jimenez.  None of these drug conspiracy defendants appear in the next scheme – the mortgage fraud – except for Bergrin and Jauregui, nor are any of these other drug defendants or Sundiata Koontz involved in the Monmouth County case.  No core group ever coalesced, in stark contrast to *Masters.*  This fact alone renders *Masters* either inapposite, or reading the case most broadly, helpful to Bergrin's argument that no enterprise existed.  The panoply of criminality alleged and the involvement of Defendant Bergrin in each scheme cannot on its face give rise to a RICO enterprise.

The Government's reasoning appears somewhat circular: it is trying both to plead a pattern of racketeering based on the alleged nature of the enterprise, and at the same

24

time, to set forth the alleged nature of the enterprise through the pattern of predicate acts. While proof of the pattern and the enterprise may coalesce, here the Government has alleged neither sufficiently in the Indictment.  Thus, the attempt to use one to establish the other fails.

> 2.    *Distinctiveness Requirement*

Beyond the aforementioned deficiencies, the Indictment also fails to satisfy the RICO distinctiveness requirement.  In order to properly allege a RICO enterprise, the Government must plead the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir.1993); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  In other words, the defendant must be the "person" who conducted the affairs of the "enterprise," and the defendant/"person" must be distinct from the "enterprise." This is the so-called "distinctiveness" requirement.

As discussed above, "The Bergrin Law Enterprise" as pled is essentially Paul Bergrin, the licensed attorney, by another name.  The Government emphasized this during oral argument by asserting that the animating force behind this enterprise was the misuse of legal services to perform illegal acts. *See* Tr. 54, 80; *see also* S.I. ¶ 6 ("Defendants and other members and associates of The Bergrin Law Enterprise would provide illegal services to various criminals … who hired or otherwise used the services of The Bergrin Law Enterprise.  As part of those services, defendants and other members

and associates of The Bergrin Law Enterprise would use the special privileges granted to licensed attorneys to engage in and assist Client Criminals to engage in criminal activities.").  Through its focus on the misuse of legal services, the Government ties this enterprise together through Bergrin's status as an attorney.  "The Bergrin Law Enterprise" therefore is simply Paul W. Bergrin, Esq., without whom, as the Indictment states, none of the criminal schemes would be possible.

The Court notes that the Indictment alleges the enterprise to be a group of individuals and legal entities, including the Law Office of Paul W. Bergrin, P.C.; P.B.& V, P.A.; Premium Realty Investment Corp., Inc.; and, Isabella's International Restaurant, Inc.  In support of its enterprise argument, the Government contends that the mention of these legal entities renders "The Bergrin Law Enterprise" distinct from Paul Bergrin himself under *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).  The formality of this pleading, however, is not sufficient to allege a RICO enterprise, as the inclusion of corporations in the enterprise does not, on its own, set forth the requisite distinctiveness.

In *Cedric Kushner*, the Supreme Court assessed whether a corporate employee, "acting within the scope of his authority allegedly conduct[ed] the corporation's affairs in a RICO-forbidden way."  533 U.S. at 163.  Under this factual framework, the Court held that Don King (person) was distinct from the corporation (enterprise) that he both worked for and owned, given the distinct legal status of the corporation.  *Id.*

26

The allegations in the instant Indictment are distinguishable in several important aspects.  First, as noted above, the inclusion of different entities by the Government in the enterprise allegations does little but distract from the fact that both the person and the enterprise are Paul Bergrin, licensed attorney.  This was not the case in *Cedric Kushner*, where the allegations focused on Defendant Don King's operation of his boxing promotion company, the enterprise in a corrupt way.

Beyond the fact that the persons and the enterprise in this case are functionally Paul Bergrin, the RICO persons listed in the Indictment are identical to the alleged RICO enterprise.  Unlike the complaint at issue in *Cedric Kushner*, the Indictment does not state that Bergrin, as the RICO person, operated one or all of the corporations listed as the RICO enterprise.  Instead, the RICO persons are alleged to be the RICO Defendants and the aforementioned corporations, *see* S.I. ¶¶ 1, 2, as is the RICO enterprise.  *See* S.I. ¶ 24; Gov. Br. 28 ("Count One defines the enterprise not merely as a corporation of which Bergrin is a sole shareholder, but as an association of several individuals and business entities.")  Where the RICO persons and the enterprise are alleged to be the same individuals and corporations, there can be no distinctiveness.  The legal status of the corporations, as discussed in *Cedric Kushner*, is of no relevance under these circumstances.  Put another way, the same individuals and entities alleged to be RICO persons also cannot serve as the enterprise.  *See Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 383 (D.N.J. 2006) ("If the members of the enterprise are the same as the persons, [§ 1962(c)'s] distinctness requirement has not been met, as the 'person' and the

27

'enterprise' must not be identical."); *Kolar v. Preferred Real Estate Inv., Inc.*, Civ. No.
07-3864, 2008 WL 2552860, at *4-*5 (E.D. Pa. Jun. 19, 2008) (same).  Accordingly, the
enterprise as pled fails the RICO distinctiveness requirement.

Since Count One as set forth in the Indictment both fails to set forth a pattern of
racketeering and an enterprise, it is dismissed as to all Defendants.

## II.   Motions to Dismiss Counts Two and Three – Racketeering Conspiracy and Violent Crimes in Aid of Racketeering

Dismissal of Count One for failure to properly allege a pattern and an enterprise
requires the dismissal of Count Two – the RICO conspiracy charge.  *See Lightning Lube,
Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d)
based on a conspiracy to violate the other subsections of section 1962 necessarily must
fail if the substantive claims are themselves deficient.").

The VICAR charge, Count Three, must be dismissed as well.  To set forth a
VICAR violation, the following five elements must be shown: (1) that there was an
"enterprise," (2) that engaged in "racketeering activity," (3) affecting interstate or foreign
commerce, (4) and that the defendant committed a crime of violence, (5) "for the purpose
of gaining entrance to or increasing or maintaining his position in the enterprise." 18
U.S.C. § 1959(a).  Since the Indictment fails to allege an enterprise for the reasons noted
above, Count Three is dismissed.

### III.   <u>Conclusion</u>

For the foregoing reasons, the RICO Defendants' motions to dismiss Counts One,

Two, and Three, pursuant to Federal Rule of Criminal Procedure 12(b)(3), are

**GRANTED.**  The Court reserves on all pending pretrial motions not addressed herein.

An Order follows this Opinion.

/s/ William J. Martini_____<br>**WILLIAM J. MARTINI, U.S.D.J.**